THE EXECUTORS OF LOUISA S. VOUGHT, deceased

*v.*

JAMES T. VOUGHT et al.*

1. Equity will uphold a deed by a husband to his wife conveying the title to real estate.

2. Such deed will be presumed to have been delivered, although there is no proof that it was ever in the actual possession of the wife, when it appears from

*NOTE.—This case was decided May Term, 1884, but was not reported in its regular place.

numerous circumstances that the husband was acting as agent of the wife in making permanent improvements upon said real estate with her money, and in securing several policies of insurance upon such improvements in her name, and in transferring to her the policies which were thereon at the time of such conveyance.

3. Statements made to counsel by the wife after the death of the husband respecting the delivery or possession of such deed will be regarded as confidential, and counsel will not be permitted to disclose them, although he was counsel for both parties prior to the death of the husband.

On final hearing on pleadings and proofs.

*Messrs. William H. Vredenburgh* and *Frederick Parker,* for the complainants.

*Mr. Allan L. McDermott* and *Mr. Thomas V. Arrowsmith,* for the defendants.

BIRD, V. C.

The bill in this case declares that Philip G. Vought, being the owner of a lot of land in Freehold, in consideration of $1,000 in hand paid to him by Louisa S. Vought, his wife, made, executed and delivered to her a deed of conveyance for said lot. It bears date November 18th, 1874. It contains covenants to protect her in the title against the grantor and his heirs and assigns. The bill also declares that immediately after the delivery of said deed the said Louisa took possession of the said lot and erected a handsome dwelling-house and other buildings thereon at an expense of not less than $17,000, and then occupied them and continued to occupy them until her death. The bill next declares that after the execution and delivery of said deed Louisa gave it back to her husband for safe keeping; that in July, 1882, said Philip died, leaving a last will, in which he orders all the residue of his real and personal estate to be sold and the proceeds to be divided between a nephew and a niece; that Louisa afterwards made a will and made specific mention of this lot of land and premises as her home. It is likewise alleged that the complainants are in the peaceable possession of the said premises, but that the said nephew and niece, or some one for them, claim some

interest therein by the laws of descent or under the will of said Philip, and that said nephew and niece insist that said Philip could not make and deliver a deed directly to his wife, as is claimed was done in this case. The conclusion arrived at in the bill is that the deed so passed the title as to effectually bar the defendants from setting up any claim contrary thereto, but if this fails, then the deed itself operates as, and will be construed to be, a written declaration of trust in favor of said Louisa and her heirs, and that the defendants are charged thereby with a trust for the benefit of the complainant which the court ought to execute. The prayer of the bill is that the title to the lot in question may be settled, and the rights of all the parties determined.

The defendants, by their answer, deny all the material allegations concerning the deed, and say it never was delivered, but declare that it was retained by said Philip and was found by his executors amongst his papers after his death, and insist that it was ineffectual for any purpose. They also deny that Mrs. Vought erected the said buildings, but allege that Philip did, and that he paid the taxes thereon. The answer gives the last will of Philip in full. In one item he devises to said Louisa as follows :

"I give and devise unto my beloved wife, Louisa S. Vought, my farm, situate on the road leading from Freehold to Marlboro, to have and to hold the same unto the said Louisa S. Vought, her heirs and assigns forever."

In the next item he adds :

"I give and bequeath unto my said wife all the personal property of which I may die possessed on the farm above devised to her ; also all my interest in the personal property in and about our house in the town of Freehold, and also all moneys that may at my decease remain standing to my credit individually in The First National Bank of Freehold, New Jersey,"

which is followed by the residuary clause devising all the residue of his estate, real and personal, to his nephew and niece.

The complainants produced the deed referred to. It bears date November 18th, 1874. It was acknowledged August 3d, 1875.

---

Vought *v.* Vought.

---

The complainants' claim is not defeated because the conveyance is made directly to the wife.  See *Moore* v. *Page, 111 U. S.,* and the many cases there cited.

Nor is such claim defeated by the fact that when the deed was acknowledged it contained not the name of the grantee.  It is proved that such name has been written therein by the grantor himself, which, beyond any question, completes the execution of the instrument as between the grantor and the grantee.  I am not called upon to consider the effect of such a blank when third persons make claims, and the legality of the record of the conveyance is an element.  *Van Solingen* v. *Town of Harrison, 10 Vr. 51.*

Next as to the delivery of the deed.  This branch of the case is both interesting and important.  I am satisfied that there was such a delivery as to satisfy the law.  Whether the formal act of handing over the deed or not has been proved, the circumstances of this case show it was the intention of the grantor evidently to make a conveyance, and the same circumstances show that in his mind the work of completing it had been done.

However, it is insisted that Mrs. Vought had no knowledge of the deed, and that her story to William S. Throckmorton proves it.  Mr. Throckmorton was then and is now a counselor at law.  He was a relative of Mr. and Mrs. Vought.  They consulted him respecting their affairs.  After the death of Mr. Vought he was visiting Mrs. Vought.  On this occasion he says she told him what she had learned about the deed since her husband's death.  He declares in effect that the relation of counsel and client did not exist; but I understood him to say, very distinctly, that she advised with him about the case.  This satisfied me that Mrs. Vought was consulting him, and that in contemplation of law the relation of counsel and client did exist.  This being so, I conceived that it was my duty to overrule his testimony on this point.  Of all her friends, relatives and acquaintances, no one else seems ever to have elicited or to have been entrusted with, this secret, if the supposed secret had a foundation in fact, and this is a circumstance which emphasizes the conviction that her statement to Mr. Throckmorton was, in the highest

nature, confidential. It is, therefore, so far as my deliberations go, out of the case.

Let us look, then, at some of the circumstances which show a delivery, not a mere intention, executed, but such an act or acts as irrevocably transferred the title. Philip took title April 14th, 1874. In September, 1874, he entered into a contract with Titus & Conrad for the construction of the dwelling-house. The contract required the completion in May, 1875. As above stated, the deed from Philip to his wife bears date November 18th, 1874, twelve days before the deed under which Philip took the title was either acknowledged or recorded. This deed to his wife was acknowledged August 3d, 1875. October 19th, 1875, he assigned all of his policies of insurance on the premises to his wife—one for $2,500, one for $3,000, another for $2,500, another for $3,000, still another for $3,000. Mr. Vought himself had the respective companies, four in all, to approve of these several assignments. November 4th, 1877, he had one of these policies renewed in his wife's name. October 20th of 1877 he procured the renewal of another policy in her name. On October 12th, 1880, Mr. Vought applied for and procured a policy of insurance to be issued covering these premises and had it executed to his wife. May 11th, 1881, he procured another original policy in her name on the same premises for $2,500, and on the same day another for a like sum in another company. In one of these policies, taken out 12th October, 1880, the premises are spoken of as " her two story and attic frame slate roof building, occupied as a dwelling only, with boiler."  In the one of May 11th, 1881, the language is, " her two and a half story frame Gothic slate roof carriage house," and " her frame Gothic and slate roof barn and stables." Thus he was simply putting himself in her place, and acting as she would act with her funds and estate. This illumines all the rest.

That the money of Mrs. Vought paid for the lot upon which all these very costly buildings were erected, and for the buildings themselves, I cannot doubt. To my mind this is circumstantially established. It is true Mr. Vought had a small income; and there is abundant proof to make it plain that his ordinary

expenses about his household and otherwise would more than exhaust it. On the contrary, Mrs. Vought had a large and productive estate—in principal not less than $50,000, and perhaps over $60,000, secured, in first class stocks and otherwise, unexceptionably.

But now notice further (in support of the allegation of the answer that Mr. Vought paid for all technically) that he held all of these securities and collected all of the dividends and interest upon Mrs. Vought's order, and deposited them in his own name in bank. He also collected the amounts due to her on insurance policies—in January, 1875, two amounts of $1,875 each and one of $1,250, and February following one of $1,800, and placed them to his own account in bank. He also collected and treated in a like manner $10,361.60 on one of her bonds and mortgages. Against these funds he drew his checks and made his payments thereby. I repeat that this evidence in detail seems to fully establish the use of these moneys by Mr. Vought, both for the payment of the consideration money for the lot and the buildings thereon. He acted in her place and behalf, and his actions were hers. Agency crowns every act.

It is true these details may all show how full of vagaries a man who ought to be a business man may be; may show how slipshod he moved along in matters both delicate and important to himself, his wife, and his next of kin. One striking example covers all. Mrs. Vought was the owner of a large and valuable real estate on which she had taken over $6,000 insurance through her husband. The buildings were all consumed. Then for the first it was discovered that he had taken the policies out in his own name, which made proceedings in equity necessary to reform the policies before a recovery could be had. He was simply her agent. So in all these matters he stood in her place.

Hence, I conclude that, in contemplation of law, the deed referred to in the bill of complaint was delivered so as to effectually and irrevocably pass the title to the land described therein, according to the terms thereof, to Louisa S. Vought. And this, too, supposing that she had never seen the deed, acting for her and having all of her property and estate in his possession, the

execution of the deed by him to her completed the transfer without any other act. He held that deed then for her. He held it as effectually and as certainly for her as any other evidence of title or ownership in his possession. This view, I think, is wholly consistent with the law of agency and infringes no other rules respecting the devolution of real estate. I think it may be said, with much force, that, considering the unlimited character of his agency, Mrs. Vought, after the lapse of years especially, could not have repudiated his act and rejected the title because she had not accepted the deed, or because it had not been formally presented to her. The reasons for this view, I believe, will be manifest to all who study the details of the case.

But as the testimony stands there was an actual delivery. This deed, with many other papers of Mrs. Vought, was deposited by her for safe-keeping in a bank. There, with her other evidences of titles, it was found after her death. There is no proof whatever to overcome the very satisfactory presumption which the law raises in behalf of the complainants under these' facts. The title ought to be adjudged to have been in Mrs. Vought at her death.

The counsel for complainants pressed with great earnestness the theory advanced by the bill, that if this deed had not been delivered, it was made and held as an evidence of trust, and insisted that not only the circumstances above named, but others, confirmed this view, in support of which a number of cases were presented, amongst which are: *Hutchinson* v. *Tindall, 2 Gr. Ch. 357; Brown* v. *Combs, 5 Dutch. 36; Skillman* v. *Skillman, 2 Beas. 403; Woodruff* v. *Clark, 13 Vr. 198.* In my judgment, these cases do not carry the complainants to the point they aim at—a declaration of trust. The paper exhibited as a deed of conveyance is absolute and unqualified, if anything. If not such a conveyance, it can have no vitality. Upon the view that the grantor intended in every line just what he expressed, the court can explain his transactions with respect to the legal title. If such trustee, as he is claimed to have been under this view, the legal title remained in him, and the assignment of the said policies to his wife was, after all, vain and nugatory. Indeed, the

assignment worked a forfeiture and left them unavailing without
again invoking judicial aid.   It seems to me that this manifest
legal incongruity is overcome by the conclusion first above
reached.   Counsel said, and very truly, that as the case stands,
if no deed had been produced, the court would compel a convey-
ance or declare all the moneys expended a lien on the land.
But, the deed being found, the grantor and supposed trustee,
having already done what it is claimed the court would direct
him to do, certainly the court will not require the like formality
to be proceeded with again.   Had such suit been instituted in
the lifetime of the parties, I cannot but think that Mr. Vought
could well have answered :

"The title to these premises is not in me; I have already made a deed of
conveyance for them to Mrs. Vought; the fee is in her most absolutely; it is
true, I hold the possession of that deed, but it is not mine; it is hers, to all
intents and purposes; I only hold for her, as her agent, just as I hold the
stocks, bonds, notes, mortgages and other securities for her; this deed is no
more mine than those are; the title to the land in this deed described is
no more mine than the money due on these securities, or the money repre-
sented by this large bank account."

.   Coming into court with such an answer in hand, I do not
think anyone will say the court would require the execution and
delivery of another deed.   The court would only declare, if any-
thing, that the title passed with the date and execution of the
existing deed, just precisely as the court would have said had
the husband, in using his wife's money, purchased other real
estate, and, instead of taking the title in his own name as in this
case, had taken the title in her name and received the deed him-
self.   Having as her agent, in the use of her moneys, invested
them in lands and taken the title in her name, the title would
have been in her most complete without any other or further
act.   Nor could he resist this conclusion on any possible ground.
He could not say :   "It is true, her money made the purchase,
but the deed was delivered to me, although in her name it has
never been formally delivered to her."   The court, in such case,
would say that he held the deed for her as her agent.   So, in
my opinion, in the case under consideration, when Mr. Vought

·executed the deed produced before me, he intended to pass the
·title to his wife, and, supposing that he never exhibited the deed
·to her, he evidently held it for her.   This is just as manifest to
my mind as though he had been seen to hand it over to her with
·the fullest declarations, and then received it back from her with
·renewed expressions of confidence and trust.

I will advise a decree that all the right, title and interest of
Philip G. Vought in or to the land in question passed absolutely
to Louisa S. Vought, by the deed mentioned in the bill of com-
·plaint, and that such title remained in her at the time of her
·death, and that the defendants have no right, title or interest
therein, by, from, or under Philip G. Vought, or by, from, or
·under any last will made by him.